661 P.2d 649

The STATE of Arizona, Appellee,

v.

Thomas Leo MENARD, Appellant.

No. 2 CA–CR 2451.

Court of Appeals of Arizona,
Division 2.

Nov. 19, 1982.

Rehearing Denied Feb. 17, 1983.

Review Denied March 15, 1983.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III and Joel Glynn, Phoenix, for appellee.

William H. Callaway, Tucson, for appellant.

## OPINION

HATHAWAY, Judge.

Appellant was found guilty, after a jury trial, of arson of an unoccupied structure and criminal damage. He was sentenced to serve concurrent four-year terms in the Arizona State Prison and was credited with presentence incarceration time.

Appellant has raised two points on appeal: (1) Whether the trial court properly ruled that illegally seized evidence that had been excluded from the prosecution's case in chief could be used to impeach appellant if he chose to testify, and (2) whether the trial judge erred in failing to disqualify himself from sentencing appellant. We see no error and affirm.

As a result of appellant's motion to suppress, the trial court suppressed the use of a claw hammer seized from appellant's car the day after the fire which formed the basis of this prosecution. However, the trial court ruled on the second day of trial that the prosecution could impeach appellant with the illegally seized hammer if he elected to testify. Defense counsel objected to the trial court's proposed procedure and made an offer of proof alleging that appellant would have testified on direct examination:

"... that he was at Igor's Bar, he had a couple of drinks there, and went from there to the officers of—law offices of

Evans, and went back to Igor's Bar and had another drink, and went home and had supper. And from there he went to the Elk's. And that is going to be the substance of his testimony."

The prosecutor responded that he intended to question appellant in the following manner:

"I'm going to be asking him questions, I am going to say, you claim you were at the Elk's, you weren't in the area around the Palace, or in back of the Palace Saloon [prying] off the lock that was on the Palace Saloon.

Are these your items? Have you had contact with the hasp or lock on the evening of the fire?

And I have marked the hammer and the hammer is in the bag and I will probably ask, is this your hammer and etc."

■ There is no question that the hammer would fall within the definition of relevant evidence under Rule 401, Arizona Rules of Evidence, since it would have had a tendency to make "the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The state had introduced into evidence the hasp hinge that was found near the backdoor of the burned saloon. The hammer, seized with a defective search warrant, had been compared to the hasp hinge by the Department of Public Safety crime laboratory and in its opinion, the test revealed that the seized hammer caused the pry marks on the hasp hinge. While relevance is not a problem, appellant claims it is error to allow a piece of inadmissible evidence to be introduced for impeachment purposes. He recognizes the decision of *U.S. v. Havens*, 446 U.S. 620, 100 S.Ct. 1912, 64 L.Ed.2d 559 (1980), but claims that the *Havens* case represents a significant departure from prior cases on the issue and should not be followed. We disagree.

In *Havens*, the United States Supreme Court held that illegally seized evidence may be used for impeachment if the evidence contradicts a particular statement made by the defendant in the course of his direct examination. Here, according to the offer of proof, appellant's testimony on direct examination could have been understood as a denial of any connection with the fire and a denial of appellant's physical presence at the saloon and any connection with the forced entry on the night of the fire. The prosecution's proposed questioning would reasonably call attention to appellant's answers on direct and bring out the alleged contradictions. This was cross examination growing out of his direct testimony and under *Havens* the ensuing impeachment would not have violated his constitutional rights.

The rationale of this exception to the exclusionary rule is that "[t]he shield provided by *Miranda* cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances." *Harris v. N.Y.*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), n. 61. The trial court's ruling was correct and prevented appellant's proposed testimony from avoiding such confrontation.

Appellant alleges the trial judge should have disqualified himself from *sentencing* since at the sentencing hearing he expressed strong feelings regarding arson and the threat the crime poses. Under Rule 10.1(a), Arizona Rules of Criminal Procedure, a defendant is given the opportunity for a change of judge "if a fair and impartial hearing or trial cannot be had by reason of the interest or prejudice of the assigned judge." Appellant did not make a request for a change of judge at this time. It has been stated:

"The defendant may not test the water before deciding whether or not to request a change of judge. In the instant case, the desire of the defendant to go back and have another judge resentence after the sentence has been imposed comes too late." *State v. Munoz*, 110 Ariz. 419, 520 P.2d 291 (1974), citing *State v. Shahan*, 17 Ariz.App. 148, 495 P.2d 1355 (1972), and *State v. Carpenter*, 1 Ariz.App. 522, 405 P.2d 460 (1965).

Even disregarding the fact that appellant failed to object before sentence was imposed, we note that the record shows that the trial judge had no ill will toward appellant. After he sentenced appellant, he stated that he did not find appellant to be such a bad person but the crime horrified the court and the sentence imposed was necessary to deter others from committing it. The fact that a judge may have a strong opinion on the merits of the cause or a strong feeling about the type of litigation involved, does not make the judge biased or prejudiced. See, *State v. Myers,* 117 Ariz. 79, 570 P.2d 1252 (1977), cert. den. 435 U.S. 928, 98 S.Ct. 1498, 55 L.Ed.2d 524 (1978). The trial court's remarks were directed solely to the type of litigation involved and were not illustrative of any bias the trial court had toward appellant. Nothing in the record before us rebuts the presumption of the trial court's impartiality. We have, on our own, also examined the issue of competency of counsel raised by appellant and then rejected by him since he did not believe it reached the level of a "farce or sham." In *State v. Watson,* 134 Ariz. 1, 653 P.2d 351 (1982), the court enunciated a new standard, "whether under the circumstances the attorney showed at least minimal competence in representing the criminal defendant." Appellant suggests his defense counsel fell below the standard because he did not put him on the witness stand and meet the scientific evidence regarding the claw hammer "head on." In his brief, appellant terms this evidence as "absurd" because "... with hundreds of thousands, or perhaps millions, of similar claw hammers scattered about this nation such evidence is hardly reliable." We do not agree. Our interpretation of the record is that this claw hammer had distinctive markings on it and that such marks were found on the hasp. Such being the case, defense counsel was not guilty of incompetence in keeping such evidence from the jury by not having appellant testify.

The judgments of conviction and the sentences imposed are affirmed.

HOWARD, C.J., and BIRDSALL, J., concur.