771 P.2d 1382

**STATE of Arizona, Appellee,**

v.

**Stewart Bradley CARVER, Appellant.**

**No. CR–88–0012–T/AP.**

Supreme Court of Arizona,
In Banc.

April 11, 1989.

Robert K. Corbin, Atty. Gen., William J. Schafer, III, Chief Counsel, Crim. Div., Joseph T. Maziarz, Asst. Atty. Gen., Phoenix, for appellee.

` John C. Williams, Prescott, for appellant.

GORDON, Chief Justice.

## JURISDICTION

The jury convicted defendant, Stewart B. Carver, of armed robbery, kidnapping, and sexual assault. Carver was on probation when these offenses occurred. Carver admitted to four prior felony convictions: two for theft, one for escape from custody, and one for criminal trespass. Pursuant to A.R.S. § 13-604.02(A), the trial court sentenced him to life imprisonment for the armed robbery conviction. He received concurrent sentences of 28 years each for the kidnapping and sexual assault convictions, which the trial court ordered to run consecutively to the life sentence. This Court has jurisdiction pursuant to article 6, § 5(3) of the Arizona Constitution and A.R.S. §§ 13-4031 and -4033.

## ISSUES

Did defense counsel waive his claim of bias and prejudice against the trial judge because he failed to file a motion for a change of judge?

Under the facts and circumstances of this case, should the trial judge have recused himself after an improper attempt to influence him occurred?

Does defense counsel's failure to file a motion for change of judge constitute ineffective assistance of counsel?

In his brief, defense counsel lists additional issues, without argument, concerning defendant's prior convictions, the jury's failure to specifically find dangerousness on the armed robbery count, and the trial court's denial of lesser-included offense instructions. Does defense counsel's failure to present argument on these issues constitute abandonment of them and if not, do these issues present a valid claim that would warrant a new trial?

## FACTS

On April 14, 1986, defendant attacked the victim outside her office at the State Bar building, 363 N. First Avenue, Phoenix, Arizona. The victim was an employee of the Administrative Offices of the Arizona Supreme Court. She left her office at 8:00 p.m. that evening. As she was getting into her car, defendant pushed her from behind in an attempt to force her into the car. When the victim fought back, he began punching her in the face and head. She screamed for help. He grabbed her throat and began choking her. When he held a knife to her throat, she no longer resisted. He forced her into the car and down across the front seat with her head in his lap. He drove off, still holding the knife to her throat.

Defendant stated that he needed to get to Las Vegas because four men from the Cowgirls Bar were after him. The Cowgirls Bar is on Central Avenue in Phoenix, directly behind the State Bar building. They drove north towards Prescott, making several stops for gasoline and cold drinks. In a deserted area outside Prescott, defendant stopped the car and forced the victim to have sexual intercourse with him. After stopping for gas at a Circle K, and taking

her car and money from her purse, he finally let her go. The ordeal lasted approximately 6 hours.

The victim noted that defendant had a speech impediment in that he had difficulty pronouncing the letter "r." She later identified defendant in a photographic lineup. The Circle K clerk also identified defendant in another photographic lineup. Police recovered defendant's jacket at the Cowgirls Bar. Documents found inside the jacket identified defendant and indicated that he was on probation, having been released from the Maricopa County Jail that morning.

On October 17, 1986, police found the victim's car locked and abandoned in Sedalia, Missouri, near defendant's home town. Authorities positively identified defendant's fingerprints on a number of items in the car, including the vehicle registration slip, some styrofoam cups and an STP can. Defendant testified that the jacket was his and acknowledged his difficulty pronouncing the letter "r" because of missing teeth. He admitted to four prior felony convictions, but denied any participation in the events of April 14, 1986. He claimed that he was on a bus to Washington at the time and that he had remained in Washington until his arrest. Defendant offered no explanation on how his fingerprints got on the items in the car found in Missouri.

PRETRIAL EVENTS

The record reflects that numerous delays plagued this case from the very beginning. Initially, the trial court appointed Lawrence Katz to represent the defendant. The court set the trial date for May 6, 1987. By July 30, 1987, when Katz filed his motion to withdraw for ethical considerations, the court had already granted five continuances—three requested by Katz and two requested by the State (one because the victim would be out of town on the scheduled trial date, the other because the prosecutor would be out of town). On August 6, 1987, the court granted Katz's motion to withdraw as attorney of record and appointed William Kiger as defense counsel.

Because the trial date was then scheduled for September 1, 1987, the court granted Kiger's motion for continuance and rescheduled the trial for September 29, 1987. The court later granted Kiger's second request for a continuance and reset the trial date for October 27, 1987.

On October 19, 1987, Kiger requested yet another continuance, his third, and the eighth on the case. This time, the court heard oral argument on the motion. Kiger requested the continuance to further his investigation in Missouri. Apparently, his client now alleged that because of his prior convictions in Missouri, police had launched a conspiracy against him and somehow planted his fingerprints in the car. Purportedly, Kiger requested the continuance to go to Missouri, examine police security at the impound yard, and follow up on these allegations. The court determined that this was an insufficient basis for yet another continuance and denied the motion. However, before trial, the court allowed Kiger to interview Missouri police officers concerning the chain of custody and vehicle access after the police impound and offered to grant brief recesses or continuances during the course of the trial if necessary.

On the morning of trial, the attorneys met with the judge in chambers. Following a discussion of preparatory trial matters, Kiger advised the judge that he had heard rumors that someone from the Arizona Supreme Court contacted the trial court in an attempt to exert influence and see to it that the court deny any further continuances. The trial judge responded with candor. He relayed that, a few weeks earlier, the Yavapai county presiding judge called him into his chambers to discuss the case. The presiding judge stated that someone from the Arizona Supreme Court contacted him and urged that no further continuances be granted, that the case needed to go to trial, and that the victim was suffering. The presiding judge made it clear that these were his views as well. The trial judge became angered by this attempt at improper influence and avowed

that he would make all decisions and determinations regarding the case based on the merits. When Kiger filed his third motion for continuance, the trial judge stated that he set this incident aside, carefully reviewed the record, and determined that the circumstances did not warrant another continuance.

Following the extensive explanation by the trial judge, Kiger apologized for bringing the matter up, but indicated that he did so only in his client's best interests. He made no motion for change of judge, and the trial began moments later.

The record does not establish what actually occurred and because of our concern over the suggestion that some member of this Court or its staff by ex parte contact attempted to influence the superior court, this Court conducted an internal investigation. Our investigation revealed that a supervisory member of the nonlegal staff of this Court, acting out of concern over the welfare and morale of the Court's administrative employees, actually spoke to the presiding judge of the Yavapai County Superior Court and indicated his desire that the matter be brought to trial as soon as possible. While the concern of the supervisor is understandable, his comment was quite improper. The comment was not prompted by any communication from any justice on this Court or the Court's legal staff. We notified the administrative staff that any such communications, even from members of this Court, would be entirely improper.

■ The record in the proceedings below reflects the trial judge's response to the pressure exerted by transmission of the supervisor's comment. We attach a copy of the pertinent portion of the transcript as an appendix to this opinion. As can be seen from the transcript, the trial judge's reaction was understandable and eminently proper.[1]

## DISCUSSION
### Rule 10 Change of Judge

■ Rule 10 of the Arizona Rules of Criminal Procedure permits a change of judge under circumstances applicable to this case. Rule 10.2 entitles any party to a change of judge upon request provided that the requesting party comply with provisions of the rule.[2] Rule 10.1 entitles any party to a change of judge if a fair and impartial hearing or trial cannot be had because of the interest or prejudice of the assigned judge.[3] Pursuant to Rule 10.4, the waiver provision, a party waives his

---

1. In future cases, and in order to strengthen the appearance of impartiality, we recommend that whenever a trial judge is the target of substantial improper communications the judge inform counsel for both parties of that fact rather than waiting for counsel to raise the issue.

2. Rule 10.2 Change of Judge Upon Request states:
   a. Entitlement. In any criminal case in Superior Court, any party shall be entitled to request a change of judge.
   b. Procedure. A party may exercise his right to a change of judge by filing a pleading entitled "Notice of Change of Judge" signed by counsel, if any, stating the name of the judge to be changed. A judge may honor a timely informal request for change of judge, entering upon the record the date of the request and the name of the party requesting. Assignment to another judge shall be made in accordance with the provisions of this rule.
   c. Time for Filing. A notice of change of judge shall be filed, or informal request made, within 10 days after any of the following:

(1) Arraignment, if the case is assigned to a judge and the parties are given actual notice of such assignment at or prior to the arraignment;
(2) Filing of the mandate from an Appellate Court with the clerk of the Superior Court;
(3) In all other cases, actual notice to the requesting party of the assignment of the case to a judge.

3. Rule 10.1 Change of Judge for Cause states:
   a. Grounds. In any criminal case prior to the commencement of a hearing or trial the state or any defendant shall be entitled to a change of judge if a fair and impartial hearing or trial cannot be had by reason of the interest or prejudice of the assigned judge.
   b. Procedure. Within 10 days after discovery that grounds exist for change of judge, but not after commencement of a hearing or trial, a party may file a motion verified by affidavit of the moving party and alleging specifically the grounds for the change. Except for the commencement of a hearing or trial, no event occurring before the discovery shall constitute a

rights to a change of judge under Rule 10.2 if he participates before that judge in any contested matter in the case and under Rule 10.1 if he allows a proceeding to commence or continue without objection after learning of the cause for challenge.[4]

It is clear that defense counsel, Kiger, failed to file a peremptory challenge for change of judge pursuant to Rule 10.2. He did not comply with the procedural requirements of the rule and pursuant to Rule 10.4, he waived his right to a peremptory challenge when he allowed the trial to commence. Even if we were to construe Kiger's discussion in chambers as an informal motion for change of judge for cause under Rule 10.1, it is evident that Kiger did not comply with the affidavit requirements under the rule. Placing his perceptions and concerns "on the record" does not satisfy the specificity requirement under the rule. Moreover, the defendant waived his right to a change of judge when he allowed the trial to begin without objection. *See State v. Poland,* 144 Ariz. 388, 394–95, 698 P.2d 183, 189–90 (1985), *aff'd,* 476 U.S. 147, 106 S.Ct. 1749, 90 L.Ed.2d 123 (1986). Absent a timely motion for change of judge, a recusal for bias is discretionary with the trial judge. *State v. Carpenter,* 1 Ariz. App. 522, 527, 405 P.2d 460, 465 (1965).

### Recusal

■ Rule 81, Canon 3 of the Arizona Rules of the Supreme Court governs the

judicial duty of disqualification. A judge must disqualify himself from any proceeding if his impartiality might be reasonably questioned or if he has a personal bias or prejudice concerning a party.[5] There is a positive obligation on the part of the judge not only to be impartial, but to be seen to be impartial. *Matter of Haddad,* 128 Ariz. 490, 498, 627 P.2d 221, 229 (1981).

■ The right to a fair trial is the foundation of our judicial system. Necessarily included in this right is the right to have the trial presided over by a judge who is completely impartial and free of bias or prejudice. *State v. Neil,* 102 Ariz. 110, 112, 425 P.2d 842, 844 (1967). Bias or prejudice means a hostile feeling, ill will, undue friendship, or favoritism towards one of the litigants. *In re Guardianship of Styer,* 24 Ariz.App. 148, 151, 536 P.2d 717, 720 (1975). There is a presumption of impartiality by the trial court and the party seeking recusal must prove bias or prejudice by a preponderance of the evidence. *State v. Rossi,* 154 Ariz. 245, 247, 741 P.2d 1223, 1225 (1987); *State v. Perkins,* 141 Ariz. 278, 286, 686 P.2d 1248, 1256 (1984); *State v. Menard,* 135 Ariz. 385, 387, 661 P.2d 649, 651 (Ct.App.1982).

■ We first examine whether the trial judge's impartiality might reasonably be questioned in this case. Defendant argues that there existed an "appearance of inter-

waiver of rights to change of judge for cause. *Allegations of interest or prejudice which prevent a fair and impartial hearing or trial may be preserved for appeal.*
c. Hearing. Promptly after the filing of the motion, the presiding judge shall provide for a hearing on the matter before a judge other than the judge challenged. The hearing judge shall decide the issues by the preponderance of the evidence and following the hearing, shall return the matter to the presiding judge who shall as quickly as possible assign the action back to the original judge or make a new assignment, depending on the findings of the hearing judge. If a new assignment is to be made it shall be made in accordance with the provisions of this rule.

4. Rule 10.4 Waiver and Renewal states:
a. Waiver. A party loses his right under Rule 10.2 to a change of judge when he participates before that judge in any contested matter in the

case, an omnibus hearing, any pretrial hearing, a proceeding under Rule 17, or the commencement of trial. A party loses his right under Rules 10.1 and 10.3 when he allows a proceeding to commence or continue without objection after learning of the cause for challenge.

5. Rule 81, Canon 3, Rules of the Supreme Court states in pertinent part:
(C) Disqualification.
(1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including, but not limited to instances where:
(a) He has a personal bias or prejudice concerning a party or personal knowledge of disputed evidentiary facts concerning the proceeding.

est or prejudice" as a result of the conversation between the presiding judge and the trial judge concerning further continuances. He claims that the trial judge felt that the Arizona Supreme Court was looking over his shoulder and that he was the subject of special scrutiny. Defendant offers no proof, nor do we find any evidence in the record to support this allegation. To the contrary, the trial judge did an exemplary job in the trial of this case. His complete explanation of the events preceding trial and his careful reasoning given to support his rulings throughout the trial evidence his commitment to impartiality. The record reflects nothing to suggest that his impartiality could reasonably be questioned.

Appearance of interest or prejudice is more than the speculation suggested by the defendant. It occurs when the judge abandons his judicial role and acts in favor of one party or the other. For example, in *State v. Brown*, 124 Ariz. 97, 602 P.2d 478 (1979), the trial judge reviewed the court file and noted discrepancies in the defendant's testimony. He called this to the attention of the prosecutor. When the prosecutor failed to act, the judge called his supervisor at the County Attorney's office and directed a perjury investigation. This Court held that the judge's actions gave the appearance of abandoning his role as a fair and impartial judge. In contrast, we find no evidence that the trial judge abandoned his judicial role in this case.

■ We next examine whether there is evidence of a personal bias or prejudice concerning defendant. The defendant does not offer proof, nor do we find evidence in the record of any facts to suggest that he was denied a fair trial before an impartial judge. Simply because the trial judge was the recipient of an improper attempt to speed up the proceeding, does not require

the conclusion that he was biased or prejudiced against the defendant. Bare allegations of bias and prejudice, unsupported by factual evidence, are insufficient to overcome the presumption of impartiality and do not require recusal. *State v. Myers*, 117 Ariz. 79, 570 P.2d 1252 (1977) (absent proof of bias and prejudice, allegation that trial judge felt criminals were being treated too leniently was insufficient to require disqualification), *cert. denied*, 435 U.S. 928, 98 S.Ct. 1498, 55 L.Ed.2d 524 (1978); *State v. Munoz*, 110 Ariz. 419, 520 P.2d 291 (1974) (recusal not required when, from prior dealings, judge acquired accurate information about defendant where a complete presentence report would have contained such information anyway and defendant failed to request change of judge prior to sentencing); *State v. Foggy*, 107 Ariz. 307, 486 P.2d 789 (1971) (improper sentence originally imposed and case remanded to same judge for resentencing insufficient to establish bias and prejudice so as to warrant disqualification), *cert. denied*, 407 U.S. 915, 92 S.Ct. 2446, 32 L.Ed.2d 690 (1972); *State v. Menard*, 135 Ariz. 385, 661 P.2d 649 (Ct.App.1982) (judge's expression of strong personal feelings against arson insufficient to establish bias and prejudice so as to warrant disqualification).

## *Ex Parte Communications*

■ As further provided by Canon 3, Rule 81 of the Arizona Rules of the Supreme Court, a judge should neither initiate nor consider ex parte applications concerning a pending or impending proceeding.[6] Ex parte communication will not necessarily require recusal. *State v. Thompson*, 150 Ariz. 554, 724 P.2d 1223 (Ct.App.1986) (recusal not required in criminal case where trial judge has heard unfavorable remarks about defendant during prior trial of codefendant); *Smith v. Smith*, 115 Ariz. 299, 564 P.2d 1266 (Ct.App.1977) (party's law-

---

**6.** Rule 81, Canon 3, Rules of the Supreme Court states in pertinent part:

  (A) Adjudicative Responsibilities

    (4) A judge should accord to every person who is legally interested in a proceeding, or

his lawyer, full right to be heard according to law, and, except as authorized by law, neither initiate nor consider ex parte applications concerning a pending or impending proceeding....

suit pending against trial judge for his actions during the course of proceedings insufficient to require recusal for bias).

In *McElhanon v. Hing*, 151 Ariz. 403, 728 P.2d 273 (1986), *cert. denied*, 481 U.S. 1030, 107 S.Ct. 1956, 95 L.Ed.2d 529 (1987), the trial judge, with the permission of the opposing party, initiated an ex parte conference in a complex commercial litigation case. The Court held that the initiation of the conference violated the rule; however, the conference did not give the appearance of impropriety sufficient to require reversal and no prejudice to the opposing party resulted from the ex parte communication. The trial judge repeatedly stated that his impartiality was unaffected and the record reflected that he informed counsel of what transpired, remained neutral, and never abandoned his role as an impartial judge.

In *State v. Perkins*, 141 Ariz. 278, 686 P.2d 1248 (1984), the trial judge received two letters from the codefendant after trial commenced. The trial judge remained impartial, denied any prejudice, and the record did not evidence any prejudice against the defendant after the judge read the letters. The Court held that it was not abuse of discretion for the judge to remain on the case. *See also State v. Mincey*, 141 Ariz. 425, 687 P.2d 1180 (1984) (informal conversation between judge and media and receipt of ex parte communications concerning sentencing did not require disqualification), *cert. denied*, 469 U.S. 1040, 105 S.Ct. 521, 83 L.Ed.2d 409 (1984); *State v. Jeffers*, 135 Ariz. 404, 661 P.2d 1105 (1983) (defendant caused mail order company to send unsolicited mailings to judge; insufficient to show bias and disqualification unnecessary), *cert. denied*, 464 U.S. 865, 104 S.Ct. 199, 78 L.Ed.2d 174 (1983); *State v. Callahan*, 119 Ariz. 217, 580 P.2d 355 (Ct. App.1978) (trial judge made full disclosure of witness' letters received prior to sentencing but because no prejudice shown disqualification not necessary).

Under the circumstances of this case, we view the conversation with the presiding judge as an ex parte communication concerning a pending proceeding and, although it was not initiated by the trial judge, we examine whether there is evidence that the trial judge gave it consideration in violation of his responsibilities under Rule 81.

Although the content of the communication from the presiding judge was unfavorable to the defendant in that further continuances were to be denied, we find no evidence and defendant fails to offer any proof of prejudice suffered as a result of this impropriety. Additionally, there is no indication that the trial judge considered the communication in his handling of the case. In fact, he explicitly stated that he would not consider the communication and view the necessity of further continuances on the merits. Analysis of the merits of Kiger's third request for a continuance and consideration of the fact that the trial judge had already granted seven continuances in the case, reveals that a denial of the motion was appropriate. That the trial judge was momentarily angered and upset over the incident is understandable and does not constitute evidence of bias requiring disqualification.

Therefore, we hold that it was not an abuse of discretion for the trial judge to deny the motion for continuance or remain on the case. It is clear that the essential fairness of the proceeding remained intact and, considering the overwhelming evidence against the defendant, it is not reasonably probable these events prejudiced the defendant.

## Ineffective Assistance of Counsel

■ To establish an ineffective assistance of counsel claim in Arizona, a convicted defendant must prove that (1) counsel lacked minimal competence as determined by prevailing professional norms, *State v. Nash*, 143 Ariz. 392, 397, 694 P.2d 222, 227, *cert. denied*, 471 U.S. 1143, 105 S.Ct. 2689, 86 L.Ed.2d 706 (1985); and that (2) counsel's deficient performance prejudiced the defense. *State v. Lee*, 142 Ariz. 210, 214, 689 P.2d 153, 157 (1984). *Accord Strick-*

*land v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Court need not approach the inquiry in a specific order or address both prongs of the inquiry if the defendant makes an insufficient showing on either one. *State v. Salazar,* 146 Ariz. 540, 541, 707 P.2d 944, 945 (1985).

█ Recently, in *State v. Valdez,* 160 Ariz. 9, 15, 770 P.2d 313, 319 (1989), this Court recommended that defendants raise the question of ineffective assistance under Rule 32, Ariz.R.Crim.P., 17 A.R.S. and consolidate the post-conviction proceedings with the direct appeal. We will not reverse a conviction on ineffective assistance of counsel grounds on direct appeal absent a separate evidentiary hearing concerning counsel's actions or inactions. Only where we may clearly determine from the record that the ineffective assistance claim is meritless will we elect to consider the issue on direct appeal. This case meets that limited exception. Therefore, we elect to address and dispose of this issue now because this record, viewed as a whole, plainly shows that the defendant received what the adversary system requires.

█ Assuming that Kiger's failure to file a motion for change of judge constituted ineffective assistance of counsel, we examine whether there was a reasonable probability that, but for this failure, the outcome would have been different. *Lee,* 142 Ariz. at 214, 689 P.2d at 157. Defendant argues that because of the bias or prejudice on the part of the trial judge and counsel's failure to move for a change of judge, the result of the trial, particularly with regard to sentencing, would have been different. We disagree. Considering the totality of the evidence before the jury and the rulings of the trial judge throughout the trial, we do not believe the outcome of the trial would have been any different with another judge. Evidence of defendant's guilt was overwhelming and the imposition of a harsh sentence does not establish bias or prejudice. *Perkins,* 141 Ariz. at 288, 686 P.2d at 1258.

Even so, defendant must overcome the strong presumption that Kiger's decision not to move for a change of judge was the result of trial strategy and not ineffective assistance. *State v. Santanna,* 153 Ariz. 147, 149, 735 P.2d 757, 759 (1987). Consideration of counsel's discussion in chambers, the trial judge's extensive explanation of events, his assurances of impartiality, and an unsupplemented record requires us to conclude that Kiger made a conscious decision not to move for a change of judge for strategic or tactical reasons. Thus, we find no ineffective assistance of counsel.

*Additional Issues*

█ In Arizona, opening briefs must present significant arguments, supported by authority, setting forth an appellant's position on the issues raised. Failure to argue a claim usually constitutes abandonment and waiver of that claim. *State v. Nirschel,* 155 Ariz. 206, 208, 745 P.2d 953, 955 (1987); Rule 31.13 c(1)(iv), Ariz.R.Crim. Proc., 17 A.R.S.; *State v. McCall,* 139 Ariz. 147, 677 P.2d 920 (1983), *cert. denied,* 467 U.S. 1220, 104 S.Ct. 2670, 81 L.Ed.2d 375 (1984); *State v. Smith,* 125 Ariz. 412, 610 P.2d 46 (1980); *State v. Blodgette,* 121 Ariz. 392, 590 P.2d 931 (1979).

Defendant's brief summarily lists counsel's concerns, without argument, regarding three additional issues: (1) defendant's prior convictions in Missouri, (2) the jury's failure to make a specific finding of dangerousness on the armed robbery count, and (3) the trial court's refusal to give lesser-included offense instructions. Due to counsel's failure to present argument on these claims, they are abandoned and waived. However, pursuant to A.R.S. § 13–4035, *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) and *State v. Leon,* 104 Ariz. 297, 451 P.2d 878 (1969), we searched the record for fundamental error and reviewed defendant's claims despite his failure to argue them.

█ With respect to defendant's prior convictions in Missouri, the defendant

stated that the record did not reflect whether he was represented by counsel at the time he pled guilty to those offenses. The implication was that the court improperly used those convictions to enhance his sentences. However, any issue created by the absence of this information in the record became irrelevant when defendant admitted to those convictions during his testimony on the stand. Rule 17.6 of the Arizona Rules of Criminal Procedure provides:

> Whenever a prior conviction is charged, an admission thereto by the defendant shall be accepted only under the procedures of this rule, unless admitted by the defendant while testifying on the stand.

A prior conviction, which was not challenged in the trial court on the basis that it was an uncounseled conviction, is entitled to a presumption of regularity for purposes of sentence enhancement. *State v. Anderson,* and *State v. McGowan,* 160 Ariz. 412, 773 P.2d 971 (1989). The defendant admitted to four prior felony convictions during his testimony. Therefore, we hold that the trial court properly used evidence of these prior convictions to enhance his sentences for kidnapping and sexual assault pursuant to A.R.S. §§ 13-604.02(B) and 13-604(D). *See State v. Hunter,* 137 Ariz. 234, 238, 669 P.2d 1011, 1015 (Ct.App.1983); *State v. McMurry,* 20 Ariz.App. 415, 421–22, 513 P.2d 953, 959–60 (1973). Defendant mistakenly relies on *State v. McGowan,* 155 Ariz. 392, 746 P.2d 1322 (Ct.App.1987). *McGowan* involved a guilty plea and not a conviction and trial testimony by defendant.

The court properly imposed a life sentence on the armed robbery conviction pursuant to A.R.S. § 13-604.02(A) because the court found that defendant was on probation when he committed this offense. The Missouri convictions were not a factor to the imposition of this sentence. We find no error.

■ Further, a specific finding of dangerousness is not required when the jury finds the defendant guilty of armed robbery because dangerousness is necessarily an element of that offense. We affirm our holding in *State v. Smith,* 146 Ariz. 491, 498–99, 707 P.2d 289, 296–97 (1985), and the cases cited therein.

Finally, on review of the record, we affirm the trial court's denial of lesser-included instructions on the kidnapping, sexual assault and theft of motor vehicle counts. The evidence presented at trial did not justify lesser-included offense instructions.

We reviewed the record for fundamental error and found none. We affirm the convictions.

FELDMAN, V.C.J., and CAMERON and MOELLER, JJ., concur.

Justice WILLIAM A. HOLOHAN retired before the decision of this case. Justice ROBERT J. CORCORAN did not participate in the determination of this case.

### APPENDIX

THE COURT: [L]et me respond, first, by telling you that I agree that it appears to me that either someone or one of the Supreme Court justices or someone in the administrative office of the Supreme Court has, as the message has gotten to me, whether it was meant this way or said this way, at least through the intermediary, it was conveyed to me just exactly what you said. That this case needed to go to trial and there has been too many continuances and enough was enough was the gist of the message which I got.

The intermediary of the message was Judge James Hancock, the presiding judge of this Court. . . .

[H]e informed me that he had been down in Phoenix at a meeting of some type and that he had been talked to about this case and, quite frankly, I can't remember at this time who he said talked to him, but he was talked to about the case.

And it was, he said, made clear to him that the thought was too many continuances had already been granted and that the victim was suffering and what I am saying —I am not losing sight of the obvious impact of the victim in this process, but that is essentially what I was being told.

He reviewed the file and cited the number of continuances and so forth and, quite frankly, I made no response to him. I made no response because I thought what was being done at that time was entirely improper....

If, in fact, something was originated at the Supreme Court level, passed to him and passed to me, the Supreme Court or someone from the Supreme Court was acting improperly, in my opinion.

Nevertheless, notwithstanding what was being done to me or said to me, was having, I believe, in my opinion knowing myself, the opposite effect of what was intended. Which was essentially that what you're doing is improper and I'm, in fact, now going to lean toward a continuance if someone asked simply to show that you're not supposed to do this kind of thing and it's wrong and so forth. It was generating in me the opposite response, but a response which was also the improper response as well. To be influenced either way by this was improper.

When I left that meeting, which was no more than about ten minutes, having said little or nothing to Judge Hancock, I realized that it was incumbent on me as a trial judge to, when the issue came up as I anticipated it would, that is the issue of a continuance, that I needed to make a judgment on this on the merits and not either in favor of the defendant for further continuance out of my anger and resentment, nor obviously there was never any risk that I was going to be influenced the other way.

    . . . .

[A]nd so at the time we did discuss the motion for continuance, I reviewed the file thoroughly, counted the number of continuances, not just in terms of number, but amount of preparation time. I reviewed Larry Katz' expenditure of time that he says he put in on the case and description of the work he did. I reviewed the amount of time that you had to work on it, the fact that I had given you the investigator and you had the help, and I independently concluded that there was really no good cause for the continuance, Bill. And to the extent I can assure you or that you can accept or will accept my assurances that I did so act independently of this incident that you described, it is my firm belief and conviction that I did it.