NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

v.

ANDRE TERRELL ROCKWARD, *Appellant*.

No. 1 CA-CR 18-0476
FILED 6-13-2019

Appeal from the Superior Court in Maricopa County
No. CR2015-131927-001
The Honorable Teresa A. Sanders, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Scott L. Boncoskey
*Counsel for Appellant*

**MEMORANDUM DECISION**

Presiding Judge David D. Weinzweig delivered the decision of the Court, in which Judge Kent E. Cattani and Judge James P. Beene joined.

**W E I N Z W E I G**, Judge:

¶1        Andre Rockward appeals his convictions and sentences for two counts of forgery, a class 4 felony, and one count of theft, a class 1 misdemeanor. After searching the record and finding no arguable, non-frivolous question of law, Rockward's counsel filed a brief in accordance with *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969), asking this court to search the record for fundamental error. Rockward had the opportunity to file a supplemental brief, but did not. He did, however, ask his counsel to list six issues in the *Anders* brief and we address them. After reviewing the record, we affirm Rockward's convictions and sentences.

## FACTS AND PROCEDURAL BACKGROUND

¶2        Rockward purchased an Xbox One console, several games and accessories from A.L. with counterfeit bills. Rockward learned about the sale on Craigslist and expressed interest to A.L. under the false name "Mike." After communicating by phone and text, A.L. and Rockward agreed to meet and complete the deal for a lower purchase price ($540 instead of $550) because Rockward only had $20 bills and could not get to the bank. Rockward had used "two or three" different phone numbers.

¶3        A.L. and his girlfriend, K.S., met Rockward in a Walmart parking lot. Rockward looked at the merchandise and put it in his car. He then removed and counted 27 twenty-dollar bills from a bank envelope, returned the bills to the envelope and handed the envelope to A.L. A.L.'s girlfriend watched from the car and "thought it was weird" how Rockward counted the money and had it in a bank envelope after earlier complaining he could not get to the bank. As a precaution, she photographed Rockward's license plate.

¶4        After leaving the parking lot, A.L.'s girlfriend examined the bills and concluded they were fake based on look and feel. She and A.L. contacted the police, and an investigation ensued.

¶5        Phoenix police officers met with A.L. and K.S. that same day and confirmed the bills were counterfeit. They gathered some general information and then ran the license plate number on Rockward's vehicle using the photograph taken by K.S., which showed Rockward as the registered owner. The next day, A.L. and K.S. separately identified Rockward as the suspect from a photo lineup.

¶6            A few days later, officers went to the address where Rockward resided and knocked on the door. A woman answered. She initially denied but eventually acknowledged Rockward was inside the house and then allowed the officers in to make the arrest. The officers found Rockward in a back bedroom "with an Xbox controller in his hand." They arrested him without incident and put him in the patrol car. After being read his *Miranda*[1] rights, Rockward admitted he had used counterfeit bills to purchase the Xbox and knew the bills were counterfeit. He said he was "having a hard time trying to find a job," that he was "the only one [who] worked in his family and that he came into the fake currency, which he paid some bills with" and had used to get the Xbox. Rockward offered "to work with detectives and the Secret Service if it would help reduce his jail time."

¶7            Meanwhile, officers searched the house and found the Xbox One console, games and equipment. The serial number on the console matched the one A.L. had provided, and A.L. recognized the other equipment and games recovered by the officers. Officers also gained access to Rockward's vehicle, the same one he had driven to meet A.L. They found more counterfeit money in the driver's side compartment and door panel of the car and impounded it.

¶8            The State charged Rockward with two counts of forgery, a class 4 felony, and one count of theft, a class 1 misdemeanor. After a three-day trial, which Rockward did not attend, the jury found Rockward guilty as charged. The court found clear and convincing evidence of four prior felony convictions and sentenced Rockward to two minimum, concurrent terms of eight years' imprisonment on the forgery counts and a terminal disposition on the misdemeanor theft count.

¶9            Rockward timely appealed. We have jurisdiction under Article 6, Section 9 of the Arizona Constitution, and A.R.S. §§ 12-120.21(A)(1), 13-4031, -4033(A)(1).

## DISCUSSION

### A.    Issues Raised

¶10           Rockward asked his counsel to list six issues in the *Anders* brief, which he did. No argument or authorities are presented. Although this failure "usually constitutes abandonment and waiver of [his claims],"

---

[1]        *Miranda v. Arizona*, 384 U.S. 436 (1966).

*State v. Carver*, 160 Ariz. 167, 175 (1989), we still address the issues raised in our discretion.

### 1.  Rockward's Voluntary Absence

**¶11**  The court did not err by allowing the trial to proceed *in absentia* based on Rockward's failure to appear.  "[A] defendant's voluntary absence waives the right to be present at any proceeding," including trial, and "[t]he court may infer that a defendant's absence is voluntary if the defendant had actual notice of the date and time of the proceeding, notice of the right to be present, and notice that the proceeding would go forward in the defendant's absence."  Ariz. R. Crim. P. 9.1.  Rockward failed to appear for his trial.  His counsel avowed he received adequate notice, and the court relied on those statements to find his absence was voluntary.

### 2.  Rockward's Statements to Police

**¶12**  We find no error in the superior court's denial of Rockward's motion *in limine* to preclude his offer to help law enforcement in exchange for reduced jail time under Arizona Rule of Evidence 408.

**¶13**  Rule 408 does not apply.  Rule 408 precludes evidence of statements "made during compromise negotiations" when offered "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction."  Ariz. R. Evid. 408(a)(2).  Rockward's statement was not made in a "compromise negotiation" as contemplated by this rule.  Nor was it made in an actual plea discussion, triggering the protection of Arizona Rule of Evidence 410(a)(4).  *State v. Gill*, 242 Ariz. 1, 4, ¶ 12 (2017) ("A plea discussion entails the prosecutor and defendant negotiating whether the defendant will plead guilty or no contest to a criminal offense in exchange for some concession by the prosecutor on any aspect of the disposition of the case.").

### 3.  Judicial Bias Allegations

**¶14**  We reject Rockward's argument of judicial bias.  *State v. Myers*, 117 Ariz. 79, 86 (1977) ("Bias and prejudice means a hostile feeling or spirit of ill-will, or undue friendship or favoritism, towards one of the litigants.").  "[T]he bias and prejudice necessary to disqualify a judge must arise from an extra-judicial source and not from what the judge has done in his participation in the case." *State v. Emanuel*, 159 Ariz. 464, 469 (App. 1989) (quotation omitted).  As such, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or

partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994). Rockward points to no such statements here.

### 4. Sufficiency of Evidence

¶15        As described above, the jury had sufficient evidence for its verdicts. A.R.S. § 13-2002(A)(2) ("A person commits forgery if, with intent to defraud, the person . . . [k]nowingly possesses a forged instrument . . . ."); A.R.S. § 13-1802(A)(3) ("A person commits theft if, without lawful authority, the person knowingly . . . [o]btains services or property of another by means of any material misrepresentation with intent to deprive the other person of such property or services . . . .").

### 5. Prosecutorial Misconduct

¶16        There was no prosecutorial misconduct. "To prevail on a claim of prosecutorial misconduct, a defendant must demonstrate that the prosecutor's misconduct so infected the trial with unfairness as to make the resulting conviction a denial of due process." *State v. Hughes*, 193 Ariz. 72, 79, ¶ 26 (1998) (quotation omitted). The conduct must be "so pronounced and persistent that it permeates the entire atmosphere of the trial." *Id.* (quotation omitted). In making this assessment, we consider the "cumulative effect" of any misconduct on the trial as a whole. *Id.*

¶17        Rockward only points to two statements made in closing and rebuttal argument to support his prosecutorial misconduct claim: (1) the prosecutor's description of Rockward's conduct as to Count 1 as "a pretty decent crime and plan as far as crimes go"; and (2) the prosecutor's statement that defense counsel was "grasp[ing] at straws" by challenging the credibility of the State's witnesses. Rockward has not explained how these statements constitute misconduct, let alone how their cumulative effect rendered the whole trial unfair. The alleged misconduct falls well below the threshold for reversing the convictions, especially given the overwhelming evidence of guilt, which included Rockward's own admission to police.

### 6. Evidence of Prior Felony Convictions

¶18        The State presented sufficient evidence to establish Rockward's prior felony convictions. In particular, the State offered into evidence certified copies of the "pen packs" of four felony convictions which each include the full name, date of birth and fingerprints of "Andre Terrell Rockward." It also admitted a certified copy of a 10-print fingerprint

card, completed before trial in this case, which likewise includes the full name, date of birth and fingerprints of Rockward (as well his photograph and physical description). A forensic scientist compared the fingerprints from the pen packs and the 10-print card and testified that they matched. The court thus found "more than an adequate basis" that Rockward was the person identified in the four prior felony convictions.

**¶19** Rockward submits the evidence was insufficient because there was no direct witness testimony establishing that the pen pack fingerprints were taken from Rockward in connection with the prior convictions. But such evidence was not required because Rockward was positively identified through testimony here.

### B. Fundamental Error Review

**¶20** We have read and considered counsel's brief and have reviewed the record for reversible error. *See Leon*, 104 Ariz. at 300. We find none. Rockward was present and represented by counsel at all stages of the proceedings against him, except when Rockward waived his right to be present through his voluntary absence. Ariz. R. Crim. P. 9.1. The record reflects the superior court afforded Rockward all his constitutional and statutory rights, and the proceedings were conducted in accordance with the Arizona Rules of Criminal Procedure. The court conducted appropriate pretrial hearings, and the evidence presented at trial and summarized above was sufficient to support the jury's verdicts. Rockward's sentences fall within the lawful range, with sufficient credit given for presentence incarceration.

### CONCLUSION

**¶21** Rockward's convictions and sentences are affirmed. Counsel's obligations in this appeal will end upon informing Rockward of the outcome and his future options, unless counsel finds an issue appropriate for submission to the Arizona Supreme Court by petition for review. *See State v. Shattuck*, 140 Ariz. 582, 584-85 (1984). On the court's own motion, Rockward has 30 days from the date of this decision to proceed with a *pro se* motion for reconsideration or petition for review.

