NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

EDWIN ANTON HORAK, *Appellant.*

No. 1 CA-CR 21-0238
FILED 5-19-2022

Appeal from the Superior Court in Apache County
No. S0100CR201800331
The Honorable Michael D. Latham, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael Valenzuela
*Counsel for Appellee*

Law Office Of Elizabeth M. Hale, Lakeside
By Elizabeth M. Hale
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Vice Chief Judge David B. Gass delivered the decision of the court, in which Presiding Judge Paul J. McMurdie and Judge Angela K. Paton joined.

---

**G A S S**, Vice Chief Judge:

¶1 Edwin Anton Horak appeals his convictions and sentences for two counts of aggravated assault and one count of disorderly conduct. We affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2 This court reviews the facts in the light most favorable to sustaining the verdicts, resolving all reasonable inferences against Horak. *See State v. Felix*, 237 Ariz. 280, 283, ¶ 2 (App. 2015).

¶3 On January 12, 2018, Horak's 13-year-old child (S.H.) and S.H.'s friends (A.S. and F.F.) had a slumber party at Horak's home. During the party, Horak became angry with the group and began yelling at them because they refused to wash their hands before dinner. Horak eventually grabbed S.H.'s hair and threw S.H. onto the couch, leaving a red mark on S.H.'s forehead. When A.S. attempted to intervene, Horak yelled obscenities at A.S. A.S.'s sibling (D.S.) soon arrived to pick up the group, and Horak continued yelling at them as D.S. drove away.

¶4 On January 17, 2018, Horak became irritated with S.H. because he was displeased with the dinner S.H. brought home. In the ensuing argument, Horak "got on top of [S.H]" and "grabbed [S.H.] by the throat." S.H. escaped Horak's grasp by kicking him in the stomach, then left the home and called A.S. for help.

¶5 A few days later, a police officer investigated a third-party report of the incidents between Horak and S.H. The officer arrested Horak after obtaining written statements from S.H., A.S., and D.S. Following *Miranda* warnings, Horak admitted to some of the events during the slumber party, but he denied hitting S.H. and said he was entitled to "discipline [S.H.] whenever he wants."

¶6 The State charged Horak with eight crimes stemming from the two incidents. From the slumber party incident, the State charged him

with one count each of aggravated assault for knowingly touching S.H. with the intent to injure, insult, or provoke S.H., a Class 6 felony (count 3); aggravated assault for knowingly touching A.S. with the intent to injure, insult, or provoke A.S., a Class 6 felony (count 4); disorderly conduct, a Class 1 misdemeanor (count 7); and child abuse, a Class 4 felony (count 8). From the dinner incident, the State charged Horak with one count of aggravated assault for causing physical injury to S.H., a Class 6 felony (count 1); one count of aggravated assault for knowingly touching S.H. with the intent to injure, insult, or provoke S.H., a Class 6 felony (count 2); and two counts of disorderly conduct, each a Class 1 misdemeanor (counts 5 and 6).

¶7            At trial, S.H. repeatedly testified S.H. had difficulty remembering the two incidents, after which the State refreshed S.H.'s recollection using S.H.'s written statement to the police. Ultimately, the State submitted the written statements from S.H., A.S., and D.S. without objection.

¶8            Throughout the proceedings, Horak asserted a justification defense under A.R.S. § 13-403.1, which provides "[a] parent . . . entrusted with the care and supervision of a minor . . . may use reasonable and appropriate physical force upon the minor . . . when and to the extent reasonably necessary and appropriate to maintain discipline." At trial, Horak explained his defense in his opening statement:

> Now Arizona law allows a parent to exercise reasonable physical force on a child, if it's reasonable and if it is a matter of discipline. And I think you are going to find at the end of this, after you hear from [Horak's father] and from what you have already heard, I think you are going to find that a dad . . . was exercising discipline.

As part of his defense, Horak had his father testify to show Horak was not a violent person and had never—and would never—hurt S.H., even when disciplining S.H. In the closing argument, Horak urged the jurors to find his conduct was justified:

> This is a case of a father trying to discipline his child. And he may not do it the way that you have done it, the way that I have done it, or anybody else. He's allowed to [use] . . . physical force against [S.H.], exercise it against [S.H.] if it's reasonable and if it's for discipline. That is the justified . . . conduct.

3

**¶9** The jury found Horak guilty on counts 2, 3, and 7 but acquitted him on the remaining counts. The superior court sentenced him to consecutive prison terms of 2.75 years on counts 2 and 3, followed by six months' jail on count 7.

**¶10** Horak timely appealed. This court has jurisdiction under article VI, section 9, of the Arizona Constitution, and A.R.S. §§ 13-4031 and 13-4033.A.1.

## ANALYSIS

### I. Admission of the Written Statements

**¶11** Horak first argues the superior court violated his due process rights by erroneously admitting the written statements from S.H., A.S., and D.S. Specifically, Horak asserts the documents contained impermissible other-act evidence and, as a result, "there is no way to know if [he] was convicted because the jury thought he was a 'bad man' and deserved some sort of punishment or if he was convicted on less evidence than usually required[.]" Horak cites the following allegations found in the documents to support his claim: (1) S.H. twice said Horak grabbed S.H. by the throat and threw S.H. against a wall, and S.H. otherwise generally alleged he had grabbed S.H. and yelled at S.H.; and (2) D.S. claimed D.S. regularly picked up S.H. from Horak's residence in the middle of the night "because of [S.H.'s] dad" and had observed Horak become confrontational with A.S.

**¶12** Because Horak did not object to the evidence, we review its admission for fundamental, prejudicial error. *See State v. Henderson*, 210 Ariz. 561, 567, ¶ 19 (2005). To obtain relief under fundamental-error review, Horak must show error exists, the error was fundamental, and he suffered prejudice. *See State v. Escalante*, 245 Ariz. 135, 142, ¶ 21 (2018). Error is fundamental when it (1) goes to the foundation of the case, (2) deprives the defendant of an essential right, or (3) is so egregious the defendant could not have received a fair trial. *Id.* Defendants must make a separate showing of prejudice under prongs one and two. *Id.* To prove prejudice, Horak must establish "a reasonable jury could have plausibly and intelligently returned a different verdict" absent the error. *Id.* at 144, ¶ 31. In applying the objective "could have" standard, this court examines the entire record, including the parties' theories and arguments, as well as the evidence. *Id.* The "could have" inquiry "necessarily excludes imaginative guesswork." *Id.*

**¶13** We address some preliminary matters to clarify Horak's arguments. Because Horak does not argue the error was fundamental

under prongs two or three, we need not consider them. *See State v. Carver*, 160 Ariz. 167, 175 (1989) ("Failure to argue a claim usually constitutes abandonment and waiver of that claim."). Horak also does not challenge the trial testimony from S.H., A.S., and D.S. Instead, Horak bases his fundamental-error claim solely on the admission of the three written statements. To the extent Horak argues the written statements were cumulative to the testimony—such as his challenge to D.S.'s written statement—his argument fails. *See State v. Moody*, 208 Ariz. 424, 455, ¶ 121 (2004) (holding no fundamental error when the challenged evidence was merely cumulative). As a final preliminary matter, though Horak mentions A.S.'s written statement, he presents no meaningful argument to suggest the superior court fundamentally erred when it admitted that document. We, therefore, conclude he waived his claim of error with respect to A.S.'s statement. *See Carver*, 160 Ariz. at 175; *see also* Ariz. R. Crim. P. 31.10(a)(7).

**¶14**         We next consider Horak's only remaining cognizable challenge: the admission of S.H.'s written statement.

**¶15**         Horak does not establish the superior court erred in admitting S.H.'s statement. True, absent an applicable exception, Arizona Rule of Evidence (Rule) 404(a) bars the introduction of character evidence to show a person acted in conformity. But Rule 404(a)(1) contains a key exception, allowing a defendant to offer evidence of a pertinent character trait to establish conformity with it. Rule 404(a)(2) also authorizes the prosecution to introduce evidence to rebut the asserted trait. Admissible character evidence—under Rule 405(a)—"may be proved by testimony about the person's reputation or by testimony in the form of an opinion," or—under Rule 405(b)—by specific instances of conduct when the character trait is an "essential element of a charge, claim, or defense".

**¶16**         Applying those principles, Horak introduced evidence he was both generally nonviolent and a nonviolent parental disciplinarian. Under those circumstances, the State could introduce specific instances of his violent conduct to rebut his defense theory, particularly given the State had to prove beyond a reasonable doubt his conduct was not justified. *See* A.R.S. § 13-205.A; *State v. Hausner*, 230 Ariz. 60, 78–79, ¶¶ 72–73 (2012) (no error in admitting evidence of the defendant's prior violent acts when the defendant opened the door to the evidence by testifying he was nonviolent and "would never harm anything").

**¶17**         Our conclusion stands even though the State offered S.H.'s written statement in its case-in-chief rather than on cross-examination or rebuttal. *See Escalante*, 245 Ariz. at 142, ¶ 21 (requiring courts to consider

the entire record in determining whether an error is fundamental); *see also State v. Henry*, 176 Ariz. 569, 580 (1993) ("[T]he state should not have elicited the [challenged] testimony in its case-in-chief. Since it could have done so on cross-examination, however, and did do so on rebuttal, the error does not require reversal."). Accordingly, Horak does not establish the jurors here might have convicted him simply for being a "bad man." And any error in admitting S.H.'s written statement did not lessen the State's burden to prove its case. *See State v. Wassenaar*, 215 Ariz. 565, 577, ¶ 50 (App. 2007) ("We may affirm on any basis supported by the record.").

¶18 Assuming the superior court improperly admitted S.H.'s written statement, Horak has not demonstrated the error went to the foundation of his case. *See Escalante*, 245 Ariz. at 141, ¶ 18 (explaining errors go to a case's foundation when they relieve the prosecution of its burden to prove an offense, directly impact a key factual dispute, or deprive the defendant of constitutionally guaranteed procedures).

¶19 Horak does not explain how his justification defense was damaged by admitting S.H.'s written statement. S.H. was reluctant to testify against Horak. S.H. repeatedly said Horak was a good father, S.H. wanted to live with Horak, S.H. was not afraid of Horak, and S.H. was aware Horak was only disciplining S.H. Indeed, Horak relied on S.H.'s testimony in his closing argument, reminding the jurors S.H. said the aggravated assaults against S.H. "didn't happen" and "he did it to discipline [S.H.]" Given these circumstances, Horak has not shown a reasonable jury could have returned different verdicts if S.H.'s written statement been excluded.

¶20 Horak also contends admitting the evidence violated his Confrontation Clause rights. This contention also fails. "The Confrontation Clause bars admission of out of court testimonial evidence unless the defense has had an opportunity to cross-examine the declarant." *State v. Parker*, 231 Ariz. 391, 402, ¶ 38 (2013). Because Horak had a full and fair opportunity to cross-examine S.H., A.S., and D.S. at trial, the evidence's admission did not infringe on his confrontation rights. *See State v. Salazar*, 216 Ariz. 316, 318, ¶ 9 (App. 2007) (confrontation rights afford only a "full and fair opportunity to probe and expose infirmities" in witnesses' testimony "through cross-examination") (citation omitted); *State v. Real*, 214 Ariz. 232, 235, ¶ 10 (App. 2007) (noting confrontation rights do not include effective cross-examination).

¶21 Even if Horak could establish fundamental error, he fails to show prejudice. Though he complains he may have been convicted on

insufficient evidence, he does not point to anything in the record to support his claim, much less articulate a fact-intensive argument proving prejudice. Instead, he speculates the challenged evidence may have affected the verdicts. *See State v. Dickinson*, 233 Ariz. 527, 531, ¶ 13 (App. 2013) (explaining defendants "must affirmatively prove prejudice and may not rely upon speculation to carry [their] burden" on fundamental-error review) (internal citation marks omitted). And the jury's acquittals on five of the eight charges—including the most serious charge of child abuse—indicate the written statements did not improperly influence the jurors. *State v. Anderson*, 199 Ariz. 187, 193, ¶ 33 (App. 2000) (rejecting an argument on fundamental-error review that prejudicial evidence inflamed the jury when the defendant was acquitted of several more serious charges).

## II.    Evidence of Horak's Intoxication

**¶22**       Horak next asserts the superior court erred by admitting (1) S.H.'s unobjected-to testimony about Horak losing his temper and arguing with S.H. after he consumes alcohol and (2) over Horak's objection, the arresting officer's testimony about Horak exhibiting physical signs consistent with alcohol consumption when the arrest occurred and admitting he had consumed "a couple of beers" earlier that day. This court reviews the first instance for fundamental error and applies a harmless-error review to the second instance. *See Henderson*, 210 Ariz. at 567, ¶¶ 18–19. Error is harmless if the State proves "beyond a reasonable doubt that the error did not contribute to or affect the verdict." *Id.* at ¶ 18.

**¶23**       The cited instances do not provide a basis to disturb the verdicts. First, similar to our reasoning *supra* ¶¶ 19–21, Horak offers mere speculation when arguing the admission of S.H.'s testimony resulted in prejudice. Second, the jury's acquittals refute the notion the officer's brief testimony unduly inflamed the jurors. *See State v. Stuard*, 176 Ariz. 589, 600 (1993) (explaining acquittals on certain charges "demonstrate[s] the jury's careful and proper consideration of the evidence"); *State v. Rushing*, 156 Ariz. 1, 3 (1988) (concluding an acquittal on one charge and a lesser-included offense conviction shows prejudicial evidence "did not so inflame the jury as to render it incapable of making critical factual determinations"). Third, the challenged instances were cumulative to several other testimonial instances throughout the trial indicating Horak consumed alcohol and became aggressive when he did so. *See Moody*, 208 Ariz. at 455, ¶ 121; *State v. Weatherbee*, 158 Ariz. 303, 305 (App. 1988) (explaining the erroneous admission of cumulative evidence is harmless).

**CONCLUSION**

¶24 We affirm.



AMY M. WOOD • Clerk of the Court
FILED: AA