IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JERMAINE PLEDGER, *Appellant.*

No. 1 CA-CR 12-0604

FILED 1-8-2015

Appeal from the Superior Court in Maricopa County
No.  CR2011-005417-001
The Honorable Robert E. Miles, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Maricopa County Public Defender, Phoenix
By Peg Green
*Counsel for Appellant*

**OPINION**

Judge John C. Gemmill delivered the opinion of the Court, in which Presiding Judge Maurice Portley and Judge Kent E. Cattani joined.

G E M M I L L**,** Judge:

¶1        We are asked to determine whether an aggravated assault conviction may be enhanced under Arizona Revised Statutes (A.R.S.) section 13-1204 for having been committed on a peace officer absent an express finding that the defendant knew the victim was a peace officer. Because we agree that the defendant's knowledge that the victim was a peace officer is not an element of the offense, we affirm Appellant Jermaine Pledger's conviction and sentence.[1]

## BACKGROUND[2]

¶2        Pledger sought to purchase approximately 170 pounds of marijuana from "Ruiz." Ruiz, led by Pledger, drove a car containing the marijuana into a residential garage. Pledger closed the garage door and as Ruiz walked into the house, another person put a handgun in Ruiz's chest and told him it was "a rip," meaning they were going to steal the marijuana. Pledger and two other armed men then held Ruiz in the residence at gunpoint. They were unaware at that point that Ruiz was a paid informant working with an undercover police officer who was observing the residence from an unmarked car parked up the street.

¶3        When the opportunity arose, Ruiz fled through the back door of the residence. The three kidnappers then fled from the house; Pledger and one accomplice left in Pledger's car; and the third accomplice fled in Ruiz's car with the marijuana.

¶4        Ruiz ran to the undercover officer and informed him it was a "drug rip." The two then pursued Pledger's vehicle and eventually found it stopped in an industrial cul-de-sac. The officer stopped his vehicle near the cul-de-sac, retrieved a bullet-proof vest from the trunk, and put it on in a manner that he hoped would allow Pledger and his accomplice to see the word "POLICE" emblazoned in yellow letters on the vest to discourage Pledger and his accomplice from taking any action against them.

---

[1] Pledger was also convicted and sentenced for conspiracy to possess marijuana for sale, possession of marijuana for sale, armed robbery, kidnapping, misconduct involving weapons, misconduct involving body armor, and two counts of aggravated assault. We address his other arguments on appeal in a separate memorandum decision filed contemporaneously with this opinion. *See* Ariz. R. Crim. P. 31.26.

[2] We view the facts in the light most favorable to upholding the jury's verdict. *State v. Girdler*, 138 Ariz. 482, 488, 675 P.2d 1301, 1307 (1983).

¶5        After the officer got back in his vehicle, Pledger drove straight at him.  As Pledger's car approached, Pledger lowered his driver's window, held a gun out the window, and pointed it at the officer.  Although the officer feared that Pledger would shoot, Pledger drove past the officer's vehicle without firing.  Other officers eventually apprehended Pledger.

## AGGRAVATED ASSAULT AS A CLASS TWO FELONY

¶6        Pledger argues the jury could not convict him of aggravated assault as a class two felony because the State failed to prove that Pledger *knew* the undercover officer was a peace officer engaged in the execution of official duties.  We disagree because the statutes at issue here — A.R.S. §§ 13-1204(A)(2) and -1204(E) — do not require such proof.

¶7        To convict Pledger of aggravated assault as charged, the State was required to prove that Pledger intentionally placed the victim in reasonable apprehension of imminent physical injury and that he did so with the use of a deadly weapon.   A.R.S. § 13-1204(A)(2).  To enhance that offense from a class three felony to a class two felony under A.R.S. § 13-1204(E), the State also had to prove the victim was a peace officer engaged in the execution of official duties:

> Aggravated assault pursuant to subsection A, paragraph 1 or 2 of this section committed on a peace officer *while the officer is engaged in the execution of any official duties* is a class 2 felony.

 (Emphasis added).

¶8        Interpretation of a statute is a question of law we review *de novo.  See Zamora v. Reinstein*, 185 Ariz. 272, 275, 915 P.2d 1227, 1230 (1996).  When interpreting a statute, we look to the plain language of the statute as the best indicator of the drafter's intent. *Id.*  We give the words and phrases of the statute their commonly accepted meaning unless the drafters provide special definitions or a special meaning is apparent from the text.  *State v. Barr*, 183 Ariz. 434, 438, 904 P.2d 1258, 1262 (App. 1995).  If the language is clear and unambiguous, we give effect to that language and do not employ other methods of statutory construction. *State v. Riggs*, 189 Ariz. 327, 333, 942 P.2d 1159, 1165 (1997).  Additionally, "[i]n construing a legislative enactment, we apply a practical and commonsensical construction." *State v. Alawy*, 198 Ariz. 363, 365, ¶ 8, 9 P.3d 1102, 1104 (App. 2000).

¶9        We conclude the language of the applicable statutes is clear and unambiguous.  In *State v. Gamez*, 227 Ariz. 445, 450, ¶ 30, 258 P.3d 263, 268 (App. 2011), this court noted that "[w]hen the legislature intends that

the mens rea apply to the status of the victim, it says so explicitly." The *Gamez* court found that the Arizona statute criminalizing sexual conduct with a minor did not require proof that a defendant knew the victim was under 18 at the time of the offense, and thus upheld the defendant's conviction notwithstanding the absence of a finding that the defendant knew the victim was under age 18. *Id.* at 451, ¶ 38, 258 P.3d at 269.

**¶10** Similarly, the statute at issue here does not require proof that the defendant knew the victim's status, in contrast with other statutes in which the legislature has imposed such a requirement. For example, A.R.S. § 13-1204(A)(8)(a) defines as a class five felony the aggravated assault of a peace officer that does not involve the use of a deadly weapon or result in a serious injury, and the statutory language requires the State to prove the defendant knew or had reason to know the victim was a peace officer engaged in the execution of official duties.[3] Similarly, under A.R.S. § 13-2508(A), to obtain a class six felony conviction for resisting arrest, the State must prove that the defendant reasonably knew that the arresting person was a peace officer or was acting under the color of a peace officer's official authority.[4] In contrast to §§ 13-1204(A)(8) and 13-2508(A), § 13-1204(E) does

---

[3] Section 13-1204(A)(8)(a) provides:

> A person commits aggravated assault if the person commits assault as prescribed by § 13-1203 under any of the following circumstances: . . . [i]f *the person commits the assault knowing or having reason to know that the victim is . . . [a] peace officer*, or a person summoned and directed by the officer while engaged in the execution of any official duties.

(Emphasis added.)

[4] Section 13-2508(A) provides:

> A person commits resisting arrest by intentionally preventing or attempting to prevent *a person reasonably known to him to be a peace officer, acting under color of such peace officer's official authority*, from effecting an arrest by:
>
> > 1. Using or threatening to use physical force against the peace officer or another.

not impose a mens rea requirement regarding the status of the victim as a peace officer engaged in the execution of any official duties. *See supra* ¶ 7. Therefore, based on the statutory language, we conclude that although the victim's *status* as a peace officer is an element of the enhanced offense, Pledger's *knowledge of the victim's status* as a peace officer is not. *See Gamez*, 227 Ariz. at 450, ¶ 29, 258 P.3d at 268.

**¶11**        Relying on A.R.S. § 13-202(A), Pledger nevertheless argues that a defendant's knowledge that the victim was a peace officer engaged in the execution of official duties is an element of the offense at issue. Section 13-202(A) provides:

> If a statute defining an offense prescribes a culpable mental state that is sufficient for commission of the offense without distinguishing among the elements of such offense, the prescribed mental state shall apply to each such element unless a contrary legislative purpose plainly appears.

Pledger would have us interpret § 13-202(A) to add a new element to an offense. We decline to do so. *See State ex rel. Morrison v. Anway*, 87 Ariz. 206, 209, 349 P.2d 774, 776 (1960) (this court "cannot read into a statute something which is not within the manifest intention of the legislature as gathered from the statute itself").

**¶12**        Through A.R.S. § 13-1204(E), our legislature has expressed its determination that aggravated assault committed with a deadly weapon against a peace officer is an offense serious enough to warrant classification as a class two felony, irrespective of whether the defendant knew the victim was a peace officer. The legislature was free to do this, and application of the statute does not violate principles of due process. *See Gamez*, 227 Ariz. at 451, ¶ 37, 258 P.3d at 269 ("Due process requires only that the state prove every *element* of a crime beyond a reasonable doubt.") (emphasis in original); *see also United States v. Feola*, 420 U.S. 671 (1975) (holding that

---

2. Using any other means creating a substantial risk of causing physical injury to the peace officer or another.

3. Engaging in passive resistance.

(Emphasis added.)

criminal responsibility for assault upon a federal undercover officer did not depend on the defendant's awareness of the victim's employment status, and noting that "[t]his interpretation poses no risk of unfairness to defendants. It is no snare for the unsuspecting. Although the perpetrator of a narcotics 'rip-off,' such as the one involved here, may be surprised to find that his intended victim is a federal officer in civilian apparel, he nonetheless knows from the very outset that his planned course of conduct is wrongful.").

## CONCLUSION

**¶13**        The trial court correctly applied the applicable statutes. For the reasons stated in this opinion and in the accompanying memorandum decision, we affirm Pledger's convictions and sentences.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama