IN THE

# ARIZONA COURT OF APPEALS
### DIVISION TWO

---

THE STATE OF ARIZONA,
*Appellee,*


*v.*


PAMELA JACQUELINE WILLIAMS,
*Appellant.*


No. 2 CA-CR 2013-0544
Filed February 12, 2015

---

Appeal from the Superior Court in Pinal County
No. CR201300056
The Honorable Boyd T. Johnson, Judge

**AFFIRMED IN PART; VACATED IN PART**

---

COUNSEL

Mark Brnovich, Arizona Attorney General
Joseph T. Maziarz, Section Chief Counsel, Phoenix
By Diane Leigh Hunt, Assistant Attorney General, Tucson
*Counsel for Appellee*

Flores & Clark, LLC, Globe
By Daisy Flores
*Counsel for Appellant*

---

# O P I N I O N

Presiding Judge Kelly authored the opinion of the Court, in which Judge Howard and Judge Espinosa concurred.

_____

K E L L Y, Presiding Judge:

¶1 After a jury trial, Pamela Williams was convicted of aggravated assault with a deadly weapon on a peace officer and use of marijuana. The trial court sentenced her to a presumptive, flat time 10.5-year term of imprisonment for the aggravated assault and to a presumptive, concurrent one-year prison term for use of marijuana. Williams argues the court erred by instructing the jury that A.R.S. § 13-1204(C), a sentence-enhancing subsection within the aggravated assault statute, did not require it to find Williams knew the victim was a peace officer. She also argues the court improperly allowed the state to use illegally seized blood evidence—admitted solely for the purpose of impeachment—as substantive evidence of use of marijuana, and that this evidence "tainted the entire trial," requiring reversal of her aggravated assault conviction. For the following reasons, we vacate Williams's conviction and sentence for use of marijuana but affirm her conviction and sentence for aggravated assault.

**Factual and Procedural Background**

¶2 We view the facts and all reasonable inferences therefrom in the light most favorable to sustaining Williams's convictions. *See State v. Haight-Gyuro*, 218 Ariz. 356, ¶ 2, 186 P.3d 33, 34 (App. 2008). Around dusk in January 2013, two deputies responded to B.F.'s home after B.F.'s mother reported Williams had threatened to shoot B.F. Deputy Fernando Ruiz left to check on Williams at her home. As he approached her house on her driveway, he identified himself as law enforcement three times, "yell[ing] at the top of [his] lungs." Williams then fired two gunshots from her home toward Ruiz.

¶3 Before Ruiz could respond, he saw Williams running down her driveway, unarmed. Ruiz ordered Williams "to turn around and get down on the ground facedown." As he handcuffed her, Williams stated: "[W]hy are you arresting me for? I shot down."

¶4 The deputies and a responding detective searched Williams's property and found a jammed semiautomatic pistol on top of her chicken coop. They seized "one additional firearm, ammunition[,] . . . marijuana and paraphernalia." Deputies also drew a sample of Williams's blood pursuant to a search warrant, which subsequent testing showed to contain THC.[1] A grand jury indicted Williams for aggravated assault while using a deadly weapon or dangerous instrument against Ruiz, threatening or intimidating B.F., weapons misconduct, possession of marijuana weighing less than two pounds, and possession of drug paraphernalia.

¶5 Following a jury trial, Williams was convicted of aggravated assault with a deadly weapon on a peace officer and use of marijuana, but acquitted of threatening or intimidating.[2] The trial court sentenced Williams as described above and she timely appealed. We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1), 13-4031, and 13-4033(A)(1).

**Aggravated Assault Instruction**

¶6 Williams argues the trial court erred by "failing to require the state to prove that [she] focused or targeted her actions toward a peace officer for . . . aggravated assault." Although we review a trial court's decision to give a jury instruction for an abuse of discretion, "we review de novo whether jury instructions accurately state the law." *State v. Fierro*, 220 Ariz. 337, ¶ 4, 206 P.3d 786, 787 (App. 2008).

¶7 Before trial, the state moved the court to determine whether § 13-1204(C) required the jury to find that Williams had knowledge of Ruiz's status as a peace officer. The court thereafter instructed the jury: "If you find [Williams] guilty of Aggravated Assault, you must then determine whether the State has proven

---

[1]Tetrahydrocannabinol.

[2]The trial court amended the possession of marijuana charge to use of marijuana and dismissed the paraphernalia charge for reasons explained below.

beyond a reasonable doubt that the victim of the Aggravated Assault was a peace officer engaged in the execution of any official duty." Williams maintains that this interpretation was error and that § 13-1204(C) should be read to "require the State to prove that [Williams] knew or should have known that the victim . . . was a peace officer."

¶8 When interpreting a statute, our primary goal "'is to discern and give effect to the legislature's intent.'" *State v. Dixon*, 216 Ariz. 18, ¶ 7, 162 P.3d 657, 659 (App. 2007), *quoting State v. Tyszkiewicz*, 209 Ariz. 457, ¶ 5, 104 P.3d 188, 190 (App. 2005). "When the plain text of a statute is clear and unambiguous there is no need to resort to other methods of statutory interpretation to determine the legislature's intent because its intent is readily discernible from the face of the statute." *State v. Christian*, 205 Ariz. 64, ¶ 6, 66 P.3d 1241, 1243 (2003). Moreover, "[w]hen the legislature intends that the *mens rea* apply to the status of the victim, it says so explicitly." *State v. Gamez*, 227 Ariz. 445, ¶ 30, 258 P.3d 263, 268 (App. 2011).

¶9 A person commits aggravated assault by "[i]ntentionally placing another person in reasonable apprehension of imminent physical injury," A.R.S. § 13-1203(A), while "us[ing] a deadly weapon," § 13–1204(A)(2). A conviction under this provision is a class two felony if the assault was "committed on a peace officer while the officer is engaged in the execution of any official duties." § 13-1204(E). A defendant so convicted may not receive "less than the presumptive sentence," and "is not eligible for suspension of sentence, commutation or release on any basis until the sentence imposed is served." § 13-1204(C).

¶10 In *State v. Pledger*, 703 Ariz. Adv. Rep. 21 (Ct. App. Jan. 8, 2015), this court recently considered whether the sentence enhancement found under § 13-1204(E) required the defendant to have knowledge of the victim's status as a peace officer. We noted that under other, related offenses, our legislature explicitly requires the defendant to have knowledge of the victim's status as a peace officer. *Id.* ¶ 10, *citing* A.R.S. §§ 13-1204(A)(8)(a) (aggravated assault against victim known to be peace officer), 13-2508(A) (resisting arrest by "a person reasonably known . . . to be a peace officer"); *see also Gamez*, 227 Ariz. 445, ¶ 27, 258 P.3d at 267 ("Statutes that . . .

relate to the same subject matter or have the same general purpose as one another . . . should be construed together as though they constitute one law."). In contrast, § 13-1204(E) "does not impose a mens rea requirement regarding the status of the victim as a peace officer." *Pledger*, 703 Ariz. Adv. Rep. 21, ¶ 10. Thus, this court concluded "our legislature has expressed its determination that aggravated assault committed with a deadly weapon against a peace officer is an offense serious enough to warrant classification as a class two felony, irrespective of whether the defendant knew the victim was a peace officer." *Id.* ¶ 12.

¶11　　　The reasoning in *Pledger* applies equally here. Unlike the crime of aggravated assault found under § 13-1204(A)(8)(a), the sentence enhancement described in § 13-1204(C) does not provide that the defendant must "commit[] the assault knowing or having reason to know that the victim is . . . [a] peace officer." Thus, the trial court's jury instruction in this case did not misstate the law.

¶12　　　Citing *State v. Williams*, 175 Ariz. 98, 854 P.2d 131 (1993), Williams nevertheless argues the state was required "to prove that [she] was focused on or targeting a peace officer." In that case, our supreme court analyzed the meaning of another sentence-enhancing statute based on victim status: dangerous crimes "committed against a minor under fifteen years of age."[3] *Id.* at 100, 854 P.2d at 133 (emphasis omitted). The court acknowledged that no intent or knowledge requirement was attached to this victim-status element, but nevertheless concluded "the defendant's conduct must be focused on, directed against, aimed at, or target a victim under the age of fifteen." *Id.* at 103, 854 P.2d at 136.

¶13　　　Our supreme court has since revisited and clarified *Williams*, however, emphasizing that "a defendant who intends to direct his criminal conduct only at adults can nonetheless be subjected to the special sentencing provisions . . . when his victim

---

[3]Former A.R.S. § 13-604.01(K)(1), which our supreme court interpreted in *Williams*, 175 Ariz. at 100, 854 P.2d at 133, has been renumbered as A.R.S. § 13-705(P)(1). *See* 2008 Ariz. Sess. Laws, ch. 391, §§ 17, 29.

turns out to be a child, even if the defendant quite reasonably believed to the contrary at the time the crime was committed." *State v. Sepahi*, 206 Ariz. 321, ¶ 17, 78 P.3d 732, 735 (2003), *quoting Williams*, 175 Ariz. at 103, 854 P.2d at 136 ("We hold only that the victim must be the person against whom the crime is directed, not that the accused must know the person is under fifteen.") (emphasis omitted). Applying that same reasoning to the present case, it was sufficient for the jury to find Williams had "[i]ntentionally plac[ed] another person in reasonable apprehension of imminent physical injury," § 13-1203(A)(2), while "us[ing] a deadly weapon," § 13-1204(A)(2), and that the person was "a peace officer . . . engaged in the execution of any official duties," § 13-1204(C).

## Use of Blood Evidence

**¶14** Williams argues that although the trial court properly excluded the blood evidence for all but impeachment purposes, the state nevertheless used it as substantive evidence. We review de novo the "suppression of evidence . . . based on exclusionary rule principles." *State v. Rosengren*, 199 Ariz. 112, ¶ 9, 14 P.3d 303, 307 (App. 2000).

**¶15** Before trial, Williams moved to suppress, inter alia, the evidence of her blood test, arguing it was obtained pursuant to a warrant that was the fruit of an unlawful, warrantless search. The trial court agreed, and consequently limited the use of that evidence to impeachment purposes only.[4] At trial, the state sought to use the blood evidence to impeach Williams's out-of-court statement, "I shot down," by showing the THC in her body would have affected her perception. The court permitted it and the state presented testimony from a criminalist showing the presence of THC in Williams's blood and describing the effects of marijuana use. Then, during closing argument, the prosecutor referred to marijuana several times while

---

[4]The trial court also excluded the marijuana and paraphernalia evidence taken from inside Williams's home, resulting in the dismissal of the paraphernalia charge and amendment of the possession charge to use of marijuana.

discussing the charge for use of marijuana and disorderly conduct—a lesser-included offense of aggravated assault.

**¶16**      On appeal, Williams does not argue the trial court erred by admitting the blood evidence to impeach her statement, "I shot down." Rather, she asserts the evidence was used improperly as substantive evidence to support her conviction for use of marijuana. She maintains that because the "blood evidence was the only evidence used to convict [her] of Use of Marijuana," her conviction for this charge must be overturned for lack of sufficient evidence.

**¶17**      When a violation of the Fourth Amendment occurs, "the exclusionary rule generally requires the suppression at trial of any evidence directly or indirectly gained as a result of the violation." *State v. Allen*, 216 Ariz. 320, ¶ 9, 166 P.3d 111, 114 (App. 2007). Nevertheless, "illegally seized evidence may be used for impeachment if the evidence contradicts a particular statement made by the defendant." *State v. Menard*, 135 Ariz. 385, 386, 661 P.2d 649, 650 (App. 1982), *citing United States v. Havens*, 446 U.S. 620 (1980).

**¶18**      In *State v. Allred*, 134 Ariz. 274, 277, 655 P.2d 1326, 1329 (1982), our supreme court acknowledged the danger of unfair prejudice when impeachment evidence is used for substantive purposes. One factor to consider in determining unfair prejudice is whether the impeachment testimony is the sole evidence of guilt. *Id.* The court concluded that where the impeachment evidence "was a pretense for substantive use of an otherwise inadmissible . . . statement" and, if admitted, the statement "would form the only evidence that the crime was committed" by the defendant, "the danger of unfair prejudice and unjust determination is so great" as to require vacating the defendant's conviction on that charge. *Id.* at 278, 655 P.2d at 1330 (emphasis omitted).

**¶19**      We find this analysis applicable here. The state concedes that "no other evidence of [Williams's] use of marijuana was introduced at trial" and her "conviction . . . should be reversed for lack of sufficient substantive evidence." Accordingly, we vacate Williams's conviction and sentence for use of marijuana.

**¶20**        Williams, however, pointing to the prosecutor's closing arguments, contends that "the use of the blood evidence tainted the entire trial" and therefore, "the conviction for Aggravated Assault should be overturned as well." We disagree. Setting aside those statements directed at the now-vacated charge for use of marijuana, the remaining comments related to Williams's reckless handling of a firearm and the disorderly conduct charge. *See* A.R.S. § 13-2904(6) ("A person commits disorderly conduct if, with intent to disturb the peace or quiet of a neighborhood, family or person, or with knowledge of doing so, such person . . . [r]ecklessly handles, displays or discharges a deadly weapon or dangerous instrument."). The prosecutor acknowledged Williams claimed she had "shot down," which tended to show she had safely discharged her firearm. But, the prosecutor argued, the active THC in her body "would have an impact on her body, her mind, and her perception." Thus, these comments were consistent with the purpose for which the blood testing evidence had been admitted. *See Menard*, 135 Ariz. at 386, 661 P.2d at 650.

**¶21**        We recognize that two of the prosecutor's later comments revisiting this issue characterized the use of marijuana while using a firearm as inherently reckless. However, if a party wishes to clarify how the jury may use evidence, it is the party's responsibility to request a limiting instruction pursuant to Rule 105, Ariz. R. Evid. *See State v. Miles*, 211 Ariz. 475, ¶ 31, 123 P.3d 669, 677 (App. 2005). Or, if a defendant believes a prosecutor's comments amount to misconduct, the defendant can object after hearing those statements. *See State v. Moody*, 208 Ariz. 424, ¶ 153, 94 P.3d 1119, 1155 (2004). Williams did not take either course of action, and the issue is thus waived for all but fundamental error. *Id.* ("Failure to object to a comment in closing argument waives that argument on appeal, and we therefore review it only for fundamental error."). And, because she does not argue the prosecutor's comments resulted in fundamental error, we need not consider the issue further. *See State v. Moreno-Medrano*, 218 Ariz. 349, ¶ 17, 185 P.3d 135, 140 (App. 2008) (failure to argue fundamental error waives issue on appeal).

**Disposition**

**¶22** For the foregoing reasons, we vacate Williams's conviction and sentence for use of marijuana, but affirm her conviction and sentence for aggravated assault.