NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

APRIL DAWN GORMAN, *Appellant.*

No. 1 CA-CR 19-0357 and 1 CA-CR 19-0450
CONSOLIDATED
FILED 8-25-2020

Appeal from the Superior Court in Yuma County
No.  S1400CR201800216
The Honorable Brandon S. Kinsey, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Yuma County Public Defender's Office, Yuma
By Raymond A. Hanna
*Counsel for Appellant*

_____

## MEMORANDUM DECISION

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Jennifer B. Campbell joined.

_____

**C A T T A N I**, Judge:

**¶1**        April Dawn Gorman appeals her conviction of one count of reckless child abuse and the resulting imposition of probation.  She argues that the superior court erred by failing to grant her motion for judgment of acquittal and by instructing the jury improperly.  For reasons that follow, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

**¶2**        One evening in February 2018, several children from Gorman's neighborhood informed her neighbor that Gorman's nine-year-old son, Z.G., had pointed a gun at them.  The neighbor went to Gorman's home to determine whether that report was true. Gorman was not home, and Z.G. answered the door.  After the neighbor spoke with the boy, Z.G. brought out a revolver and gave it to him.  The neighbor took the gun and called the police.

**¶3**        Yuma police officers Shrewsbury and Garcia responded to the scene.  Officer Shrewsbury noticed that Z.G. looked unkempt, had dirty and untrimmed fingernails, and had earwax sticking out of both ears.  Z.G. did not have access to a home or cell phone and did not have any way to contact Gorman.  The officers entered Gorman's home to determine where the gun came from and examine the condition of the home.   The house was generally dirty and smelled of urine, the smell emanating from Z.G.'s room.  Officer Shrewsbury discovered an unlocked gun cabinet containing several guns and ammunition in the master bedroom.

**¶4**        Gorman arrived at the house about an hour later.  The officers explained why they were there and told Gorman that they would be arresting Z.G.  Gorman responded that although she knew the weapons were in the house, she did not know they were unsecured and that, in any event, Z.G. knew not to touch them.  She also told the officer that Z.G. had a .22 caliber beginner's rifle and that he knew how to load and unload a

gun. Gorman indicated that she typically left Z.G. at home alone while working 40 hours a week.

¶5        The officers arrested Gorman and the State charged her with one count of intentional or knowing child abuse under A.R.S. § 13-3623(A)(1). After a six-day trial, the jury found Gorman guilty of the lesser-included offense of reckless child abuse. *See* A.R.S. § 13-3623(A)(2). The court suspended sentence and imposed two years of supervised probation, followed by three years of unsupervised probation. Gorman timely appealed, and we have jurisdiction under A.R.S. § 13-4033(A).

## DISCUSSION

¶6        Gorman argues the superior court erred by denying her mid-trial motion for judgment of acquittal under Arizona Rule of Criminal Procedure ("Rule") 20 and by failing to adequately instruct the jury. We disagree.

### I.        Rule 20 Motion.

¶7        We review de novo the denial of a Rule 20 motion. *State v. Sanders*, 245 Ariz. 113, 129, ¶ 67 (2019). A judgment of acquittal is appropriate "if there is no substantial evidence to support a conviction." Ariz. R. Crim. P. 20(a)(1). Substantial evidence describes "such proof that reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt." *State v. Harm*, 236 Ariz. 402, 406, ¶ 11 (App. 2015) (citation omitted).

¶8        As relevant here, child abuse under A.R.S. § 13-3623(A) includes "caus[ing] or permit[ting] a child . . . to be placed in a situation where the person or health of the child . . . is endangered" "[u]nder circumstances likely to produce death or serious physical injury." Relying on *State v. Greene*, 168 Ariz. 104 (App. 1991), Gorman argues that the superior court erred by denying her motion because the State did not present evidence sufficient to support a conviction under this statute.

¶9        In *Greene*, the defendant was convicted of three counts of child abuse after police discovered her children were living in "extremely dirty" conditions. *Id.* at 105. Their home's furnace was turned off, the refrigerator contained rotting food, the cupboards contained insects, and there were animal feces throughout the house. *Id.* at 105–06. The State also presented evidence that there were three guns in the house and that one of the children witnessed adults cooking illegal drugs. *Id.* Additionally, one of the children testified that her brother had found a gun in a helmet on top of

the fireplace mantel and had pointed it at another sister. *Id.* at 106. On appeal, however, the court reversed the defendant's convictions and three consecutive 12-year sentences, holding that although the State presented evidence that "a *potential* for harm existed," this evidence failed to demonstrate that such harm was *likely* to occur as required by A.R.S § 13-3623(A)(1).[1] *See id.* at 105, 107–08. The court upheld the defendant's conviction under A.R.S. § 13-3623(B)(1) for child abuse under circumstances other than those likely to cause death or serious physical injury and remanded for resentencing. *Id.* at 108.

¶10 Although the facts of *Greene* are similar to those in the instant case, they differ in at least one critical respect. In *Greene*, although there were three guns present in the house, only one was loaded and it was jammed, leaving it effectively inoperable. *Id.* at 106. There was no evidence that the other guns were loaded or that there was additional ammunition in the house. *Id.* Here, however, Z.G. had access not only to weapons, but also to ammunition, and the jury heard testimony that Z.G. knew how to load a gun. From those facts, along with the evidence that Z.G. was regularly left at home for hours at a time while Gorman was at work and that he pointed the gun at children in the neighborhood, the jury could determine that Gorman placed Z.G. in circumstances likely to result in death or serious injury.

¶11 Although Gorman argues that "the State never introduced admissible evidence from any witness that Z.G. in fact did point the gun at anyone," both the neighbor and Officer Shrewsbury testified that they were told Z.G. pointed a gun at the neighborhood children. Although Gorman objected to this portion of the neighbor's testimony as hearsay, the court permitted the testimony as evidence of the neighbor's mental state, and Gorman did not request a limiting instruction. *See* Ariz. R. Evid. 105; *State v. Williams*, 236 Ariz. 600, 604, ¶ 21 (App. 2015) ("[I]f a party wishes to clarify how the jury may use evidence, it is the party's responsibility to request a limiting instruction . . . ."). Moreover, Gorman did not object to Officer Shrewsbury's testimony recalling the same statement.

¶12 Gorman further asserts that the State "never presented testimony or evidence that the gun [Z.G. gave the neighbor] was loaded or what the caliber of the gun was." But the jury was not limited to considering only the dangerousness of the revolver that Z.G. handed to the neighbor. The jury was presented with photos showing multiple weapons

---

[1] Although *Greene* cited a former version of applicable statutes, we cite to the current version because no material revisions have since been made.

in Gorman's unsecured gun cabinet, and in her interview with officers, Gorman admitted that there was a shotgun and .22 caliber rifles in the house. The jury was also presented with photographs from the house showing boxes of shotgun and .22 caliber ammunition along with other loose ammunition lying inside the gun cabinet.

¶13        Viewing the evidence in the light most favorable to upholding the verdict, *State v. Smith*, 242 Ariz. 98, 100, ¶ 2 (App. 2017), we conclude that the State presented sufficient evidence to support Gorman's conviction.

## II.    Jury Instructions.

¶14        Gorman next argues that the superior court erred by denying her request for non-standard jury instructions. "We review the denial of a requested jury instruction for an abuse of discretion." *State v. Fuentes*, 247 Ariz. 516, 527, ¶ 40 (App. 2019). "We will not reverse a conviction [on this basis] unless the instructions, taken as a whole, misled the jurors." *Id.* (citation omitted). "[I]n some trials, the arguments of counsel can cure or obviate instructional ambiguity or error." *State v. Felix*, 237 Ariz. 280, 285, ¶ 18 (App. 2015).

¶15        Gorman requested that the superior court instruct the jury that the term "under circumstances likely to cause death or serious physical injury" "requires more than the possibility of death or serious physical injury" and that the word "likely" "means probable as opposed to possible." Both of these requested instructions sought to clarify the meaning of "likely." Gorman argues these instructions would have helped the jury "distinguish between a *potential* to cause death or serious physical injury versus a *likelihood* of causing death or serious physical injury."

¶16        However, "[w]here terms used in an instruction have no technical meaning peculiar to the law in the case but are used in their ordinary sense and commonly understood by those familiar with the English language, the court need not define these terms." *State v. Barnett*, 142 Ariz. 592, 594 (1984). Here, the word "likely" did not bear any meaning different from that of its normal use in the English language, so the court did not err by declining to define it. Further, to the extent "likely" may have been unclear or ambiguous, both the State's and Gorman's closing arguments helped clarify its meaning. The State specifically stated that "likely means probable" and Gorman's counsel stated that "likely" "calls for the probability" of serious physical injury.

¶17        Accordingly, the court did not err by declining to include Gorman's requested jury instructions.

**CONCLUSION**

¶18     For the foregoing reasons, we affirm Gorman's conviction of reckless child abuse and the resulting imposition of probation.



AMY M. WOOD • Clerk of the Court
FILED:     AA