NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

TREVOR H., JAMIE W., *Appellants*,

*v.*

DEPARTMENT OF CHILD SAFETY, L.H., *Appellees*.

No. 1 CA-JV 15-0227
FILED 1-21-2016

Appeal from the Superior Court in Yavapai County
No. JD 2003-0070
The Honorable Anna C. Young, Judge

**AFFIRMED**

COUNSEL

Law Office of Florence M. Bruemmer, P.C., Anthem
By Florence M. Bruemmer
*Counsel for Appellant Mother*

Robert D. Rosanelli, Attorney at Law, Phoenix
By Robert D. Rosanelli
*Counsel for Appellant Father*

Arizona Attorney General's Office, Phoenix
By Nicholas Chapman-Hushek
*Counsel for Appellee Department of Child Safety*

---

## MEMORANDUM DECISION

Judge Maurice Portley delivered the decision of the Court, in which Presiding Judge Margaret H. Downie and Judge Patricia A. Orozco joined.

---

**P O R T L E Y**, Judge:

**¶1** Trevor H. ("Father") and Jamie W. ("Mother") challenge the order terminating their parental rights to their child, L.H. They argue there was insufficient evidence to support the termination order. For the following reasons, we affirm.

### FACTS[1] AND PROCEDURAL HISTORY

**¶2** The parents have a history with the child welfare system, now managed by the Department of Child Safety.[2] Their parental rights to three children were terminated in 2006. L.H. was removed from their care in 2007, found to be dependent, but returned in 2009. She was subsequently removed in July 2013 after the Department received a report that the family had been evicted, was homeless, and the then five year old, who had some slight developmental issues, was wearing a diaper. The Department filed a dependency petition and L.H. was found dependent. The case plan was initially family reunification but, at the Department's request, the juvenile court added severance and adoption to the plan.

**¶3** After the permanency plan was changed to severance and adoption, the Department moved to terminate the rights of the parents based on their mental illness, chronic drug abuse, and because the child had been in an out-of-home placement for fifteen months or longer. After the severance trial, the juvenile court issued findings of fact and conclusions of law, and terminated Mother and Father's parental rights. Both parents

---

[1] "We view the facts in the light most favorable to upholding the juvenile court's order." *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7, 225 P.3d 604, 606 (App. 2010).

[2] The Department of Child Safety is the successor to the Arizona Department of Economic Security for child welfare matters. We refer to both as "the Department." *See* S.B. 1001, 51st Leg., 2d Spec. Sess. (Ariz. 2014).

appealed, and we have jurisdiction under Arizona Revised Statutes ("A.R.S.") sections 8-235, 12-120.21(A)(1), and -2101(A)(1).[3]

## DISCUSSION

**¶4**        Both parents argue that the juvenile court erred in terminating their parental rights.  They contend: (1) the Department failed to prove they could not parent because of chronic substance abuse; (2) the Department failed to prove that they could not parent because of a mental illness; and (3) the Department failed to prove the time-in-care allegation.  Mother separately argues that the Department failed to make reasonable reunification efforts and that the court erred by determining termination was in the child's best interests.[4]

**¶5**        The juvenile court may terminate parental rights if the Department proves any one of the statutory grounds for termination by clear and convincing evidence, *Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, 449, ¶ 12, 153 P.3d 1074, 1078 (App. 2007) (citation omitted), and establishes that termination is in the best interests of the child, by a preponderance of the evidence.  *Matthew L.*, 223 Ariz. at 549, ¶ 7, 225 P.3d at 606 (citation omitted).  We will only disturb a court's determination if it is unsupported by substantial evidence, *Desiree S. v. Dep't of Child Safety*, 235 Ariz. 532, 534, ¶ 7, 334 P.3d 222, 224 (App. 2014), recognizing that the court, as the trier of fact, "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings," *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4, 53 P.3d 203, 205 (App. 2002) (citation omitted).  And we will affirm the termination so long as one of the statutory grounds is supported by substantial evidence.  *See Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12, 995 P.2d 682, 685 (2000).

---

[3] We cite the current version of the statute unless otherwise stated.

[4] Father did not join with Mother's two separate challenges and has waived those arguments on appeal.  *See State v. Carver*, 160 Ariz. 167, 175, 771 P.2d 1382, 1390 (1989) (failure to argue claim on appeal constitutes abandonment and waiver of that claim).

## I.     Chronic Substance Abuse

**¶6**          The juvenile court terminated the rights of the parents based on chronic substance abuse.  Section 8-533(B)(3) requires the court to find:

> That the parent is unable to discharge parental responsibilities because of . . . a history of chronic abuse of dangerous drugs, controlled substances or alcohol and there are reasonable grounds to believe that the condition will continue for a prolonged indeterminate period.

A.R.S. § 8-533(B)(3).

**¶7**          In addition to proving that the substance abuse will continue for a prolonged indeterminate period, the court must also find that the Department made a diligent effort to provide appropriate reunification services or that such efforts would have been futile.  *Jennifer G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 450, 453, ¶ 12, 123 P.3d 186, 189 (App. 2005).  Chronic drug abuse "need not be constant to be considered chronic," but can be a "condition that has existed or continued for a long time," *see Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 377, ¶ 16, 231 P.3d 377, 381 (App. 2010) (citations omitted), and the Department bears the burden of proving by clear and convincing evidence that a parent's chronic drug abuse prevents them from parenting, and would make them incapable of "parenting effectively in the near future."  *See Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 97, ¶ 33, 219 P.3d 296, 307 (App. 2009).

### A. Evidence of Mother's Drug Abuse

**¶8**          Although the Department had other concerns about the parents, it became concerned about Mother and Father's substance abuse after they had been observed taking prescription drugs excessively during a supervised visit with L.H.  Mother initially refused to complete random urinalysis and hair follicle testing, and later failed to consistently participate in screenings arranged by the Department.  Additionally, Mother was evaluated by Dr. Gill, a licensed psychologist, who recommended that she participate in a 12-step program and address her use of opiates with her doctors to rule out the possibility of substance abuse so she could "prove to the world that you're clean as a whistle," even though she had a low probability of substance abuse.

¶9        Mother participated in the urinalysis testing between August 2014 and November 2014, but the results were positive for opiates. She also tested positive for medications that were only prescribed to Father. She, however, refused to follow a court order that she comply with Dr. Gill's recommendations; she did not attend a 12-step program and did not consult with her doctors about her use of opiates; and she did not participate in testing after November 2014.

¶10        At trial, Mother denied having a substance abuse issue and presented evidence that her use of the antidepressant Zoloft could have caused her positive opiate results. The Department responded by submitting exhibits demonstrating that Zoloft would not cause a false positive for opiates. The court, in weighing the evidence, determined that the Department met its burden as to chronic substance abuse.

¶11        Moreover, there was testimony about Mother's future ability to parent her child. Although Dr. Gill gave a guarded prognosis that Mother would be able to minimally parent the child in the foreseeable future, he also expressed concern that her pattern of behavior would continue given her depression, sleep disturbance, along with her history with the Department and past struggles parenting and providing for her children. Given his testimony and other evidence, the court, as a trier of fact, determined that Mother would not be able to parent in the indeterminate future because of her substance abuse. Based on the record, we cannot say that the court abused its discretion by finding that Mother's chronic drug abuse supported the termination of her parental rights.

### B.  Evidence of Father's Drug Abuse

¶12        Father had a history of drug use and Dr. Gill testified about that history. Dr. Gill also testified that Father told him during the evaluation that Father had been diagnosed with a degenerative disc disease, and he had been receiving treatment for three years, including prescriptions for opiates for his pain. During his urinalysis testing, Father was positive for opiates, as well as THC[5] several times between July 2013 and July 2014. He, however, stopped participating in the urinalysis testing in November 2014. Although Dr. Gill testified that Father had a low probability of drug abuse, Father did not, as the court ordered, participate in a 12-step program or address his opiate usage with his doctors. Given Father's history and his failure to take advantage of the services the

---

[5] THC is the "active component in marijuana." *State v. Lucero*, 207 Ariz. 301, 302-03, ¶ 4, 85 P.3d 1059, 1060-61 (App. 2004).

Department offered to address the issue, the evidence supported the finding that his substance abuse was unlikely to change. Consequently, the court did not abuse its discretion by finding the Department had proven that Father had a chronic drug abuse problem that warranted terminating his parental rights.

## II.    The Department's Effort to Achieve Reunification

**¶13**        Mother also argues the Department failed to offer reasonable services to reunify her with L.H. Because Mother failed to object to the sufficiency of the services offered by the Department before the start of the severance trial, she cannot raise the argument on appeal. *See Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 179, 319 P.3d 236, 241 (App. 2014) (when juvenile court record shows ADES has been ordered to provide specific services in furtherance of case plan, and court finds ADES made reasonable efforts to provide such services (including a finding that ADES made diligent effort to provide appropriate reunification services pursuant to A.R.S. § 8–533(B)(8)), "a parent who does not object in the juvenile court is precluded from challenging that finding on appeal."). Here, the juvenile court specifically noted that the Department had made reasonable efforts to provide Mother and Father with rehabilitative services in its findings of fact and conclusions of law. Consequently, Mother cannot challenge the finding.

## III.    Best Interests Determination

**¶14**        To find that termination is in a child's best interests, the juvenile court must find that the child would either benefit from the termination or be harmed by continuing the parental relationship. *Christina G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 231, 237-38, ¶ 26, 256 P.3d 628, 634-35 (App. 2011) (citation omitted). The best interest requirement may be met if the Department proves that "a current adoptive plan exists for the child," or that the child is adoptable. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 50, ¶ 19, 83 P.3d 43, 50 (App. 2004).

**¶15**        The juvenile court found that "termination will further the case plan of adoption and the child will have a permanent, stable home." Mother, Father, and the case manager all testified that L.H. was adoptable and, at the time of the trial, the Department had identified two prospective adoptive families for L.H. Moreover, termination and adoption was in the child's best interests given that she had witnessed domestic violence, and had been physically injured by Mother's inappropriate discipline. The

evidence, as a result, supports the finding that termination was in L.H.'s best interests.

## CONCLUSION

**¶16**      Based on the foregoing, we affirm the juvenile court's termination of Father and Mother's parental rights to L.H.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama